SECURITY TRUST COMPANY, administrator *de bonis non cum testamento annexo* of James Kennedy, deceased,

*v.*

MARY ANN LOVETT et al.

[Submitted February 21st, 1911.   Decided March 4th, 1911.]

1. Testator, after bequeathing his property to his wife for life, ordered a sale at her decease and a division of the proceeds among his eleven children and four named grandchildren, and then declared that if any of the children died, leaving issue, the portion given to such child or children should be equally divided between their issue.—*Held,* that the contingency of death of the children would be referred to death of the children prior to the termination of the life estate and the arrival of the time for distribution.

2. Testator directed that after the termination of a life estate his property should be divided among his eleven children and four named grandchildren, children of a deceased child, and that, if either of the children died, leaving issue, the portion given to such child or children should be equally divided between their "issue."—*Held* that, there being nothing in the will to indicate a contrary intention, the word "issue" would be given its ordinary meaning to include children and grandchildren. •

3. On the death of certain of the children after the death of the testator, and before the termination of the life estate by the death of the widow, each leaving issue, some of which (grandchildren of the testator) had living children born prior to the death of the widow, the issue of the testator's children so dying, were not entitled to partake as one general class, but the interest of each child so dying would be distributed to his or her children and grandchildren in equal shares.

4. Where testator bequeathed a life estate to his wife, and then directed that on her death the property be sold and the proceeds divided among his eleven children and four named grandchildren, children of a deceased child, and declared that, should either of the children die, leaving issue, the portion given to such child or children should be equally divided between their issue, testator's several children took vested interests at testator's death, subject to be divested in favor of their issue, in the event of their death without issue before the death of the widow.

5. Where testator devised his property to his wife for life and at the termination of the life estate, directed that the same be sold and the proceeds divided among testator's eleven children and four named grandchildren, it was not optional with the executors whether they would sell or not, and hence there was a conversion of realty into personalty, so that the gifts to the children would be treated as gifts of personalty.

6. The contingency in such case attached only to the time of payment, and not to the substance of the gift, and the death of a son after testator's death, but before the death of the life tenant, leaving a widow, · but no issue, did not divest the gift to such son.

7. Testator bequeathed a life estate in his property to his widow, and directed that after the termination thereof the property should be sold and the proceeds divided equally among testator's eleven children, a one-twelfth part to go to four named grandchildren, children of a deceased daughter.—*Held* that, there being no provision in the will for a residue, the children of such deceased daughter would be regarded as taking as a class, so that, on the death of one of such children, intestate and without issue, prior to the death of the testator, the bequest as to the child so dying would be regarded as having lapsed, and the gift distributed among the survivors.

8. *3 Gen. Stat. 1895 p. 3763 § 34* provides that when an estate shall be devised by will to any person, being a child or other descendant of the testator, or a brother or sister, or any descendant of a brother or sister of such testator, and such devisee or legatee should, during the life of

such testator, die, testate or intestate, leaving a child or children, or one or more descendants of a child or children, who shall survive the testator, the devise to such person dying in testator's lifetime shall not lapse, but the estate shall vest in such child or children, or descendant, in the same manner as if the devisee or legatee had survived the testator, and had died intestate.—*Held*, that such section does not include a case in which the legatee dies without issue, nor where it appears that the testator intended to make a bequest to a class as distinguished from the individuals composing the class at the time the will was made.

On bill, answer and agreed state of facts.

The bill is filed to procure a construction of the will of James Kennedy, deceased.

The material provisions of the will are as follows:

"*Second Item.*—I give, devise and bequeath all my estate both real, personal and mixed, of whatsoever name and nature wheresoever situate or to be found, of which shall belong to or be owned by me at the time of my death unto my beloved wife Margaret, to have and to hold the same during the term of her natural life.

"*Third Item.*—That after the decease of my said wife Margaret, it is my will that my executors hereinafter named, shall sell and dispose of the real estate at public or private sale, at such times, and upon such terms, and in such manner as to them shall seem meet, and the proceeds from such sales be divided between my children Mary Ann Lovett, Rosanna Prickett, John Kennedy, William Kennedy, James Kennedy, Martha Allison, Margaret Kaighn, Louisa Graham, Rebecca Cavanaugh, Charles Kennedy and Laura Virginia Carroll, share and share alike, and one-twelfth part or share to be divided between Walter, James, Ralph and Elizabeth Eisley, children of my deceased daughter Sarah Eisley, to which she would be entitled to if living.

"*Fourth Item.*—Should either of my above named children die leaving issue, it is my will that the portion herein devised or bequeathed to such child or children shall be equally divided between their issue."

*Mr. J. Charles Winters*, for the complainant.

*Mr. Patrick H. Harding*, for the defendant May Reed.

*Mr. Oscar B. Redrow*, for Wilhelmina Kennedy et al.

LEAMING, V. C.

By the second paragraph of the will the property of testator is given to his wife for life, and by the third paragraph a sale of

the property is ordered to be made, at the decease of the widow, and the proceeds of the sale divided among testator's eleven children and four grandchildren, each child taking one share and the four grandchildren taking the share of the deceased child.

The present controversy arises from the circumstance that after unqualifiedly directing payment to be made to his eleven children, testator, by the fourth paragraph of his will, provided that should either of the children die, leaving issue, the portion given to such child or children should be equally divided between their issue.

This provision, relating to the contingency of the death of the children, will, by the accepted rules of construction in such cases, be understood to refer to the death of the children prior to the period of distribution—that is, prior to the termination of the life estate by the decease of the widow. *Brown* v. *Lippincott, 49 N. J. Eq.* (*4 Dick.*) *44; Fischer* v. *Fischer, 75 N. J. Eq.* (*5 Buch.*) *74.*

It will be observed that testator has not directed that the share of any son or daughter who dies leaving issue should go to the children of such son or daughter; the provision is that the share shall be divided between the "issue" of the child or children dying with issue. Three of the children of testator have died since the death of testator and before the death of the widow, and each of the three so dying have left children who are now alive, and some of these children now alive (grandchildren of testator) have living children (great grandchildren of testator) who were born prior to the death of the widow of testator.

It is settled in this state that the word "issue," in its ordinary meaning, embraces grandchildren and remoter descendants, as well as children, and that meaning must be attributed to the word when used in a will as here used, unless from the will it can be clearly ascertained that a more restricted meaning was intended by testator. Unless so restricted it includes children of a living child. *Ingliss* v. *McCook, 68 N. J. Eq.* (*2 Robb.*) *27, 40, 41; Price* v. *Sisson, 13 N. J. Eq.* (*2 Beas.*) *168, 177, 178; S. C. on appeal, 17 N. J. Eq.* (*2 C. E. Gr.*) *475, 485; Coyle* v. *Coyle, 73 N. J. Eq.* (*3 Buch.*) *528.* I find nothing in the will in question from which it may be properly determined that the word "issue"

was used by testator with any meaning other than its ordinary meaning; indeed, the will contains no provision which even suggests that idea. It is plain, therefore, that the grandchildren of testator's children share in the distribution. The extent of the share which these grandchildren of deceased children of testator take is determined by the language of the will. That provision is clearly to the effect that the share of a child of testator who dies leaving issue shall be divided *equally* between such issue. Not only is that the clear purport of the language used in the will, but it is also in harmony with the rule adopted in cases in which issue of a given person are referred to in a will as the objects of testator's bounty in the event of the death of such person with issue. The rule is stated in *Jarman on Wills* as follows:

"The word issue, though in its popular sense is said to be children, is technically, and when not restrained by the context, co-extensive and synonymous with descendants, comprehending objects of every degree. And here the distribution is *per capita*, not *per stirpes*."

*2 Jarm. Wills* (*5th Am. ed.*) *635.* This text is approved by our court of errors and appeals in *Weehawken* v. *Sisson, 17 N. J. Eq. (2 C. E. Gr.) 486.* The suggestion is made that the issue of the several children of testator who have died before the period of distribution, leaving issue, may take as one general class, and that distribution will accordingly be made among all of them irrespective of the child whose issue they may be. This view is clearly untenable. The general structure of the will, as well as the language of the paragraph here in question, discloses what appears to be a defined purpose on the part of testator to distribute his estate to his several children and their respective lines in such manner that each child and the line of a deceased child shall receive one equal share. While the interests of the several children of testator may properly be regarded as vested interests at the death of testator, they were, by the terms of the will, to be divested in favor of their issue in the event of death with issue before the death of the life tenant. The manifest plan is that the issue of a deceased child shall take the share of the deceased child by substitution. The result is that the one-twelfth share of Rosanna Prickett, deceased, should be distributed to her two

daughters and to her two granddaughters in equal shares—that is, one-fourth thereof to each. The one-twelfth share of William Kennedy, deceased, should be distributed to his two sons and four granddaughters in the same manner. The one-twelfth share of Martha Allison, deceased, should be distributed to her four children and three grandchildren in the same manner.

Another son of testator died intestate in 1895—after the death of testator and before the death of the life tenant—leaving no issue, and leaving a widow. By the third paragraph of the will of testator, one-twelfth of the proceeds of sale of testator's real estate is ordered paid to this son at the decease of testator's widow. This provision was clearly operative to confer upon this son, at the death of testator, a vested interest in the nature of a remainder in the share named. The gift to the several sons must be treated as legacies of personal estate, as distinguished from devises of real estate; for where land is directed to be sold in any certain event, and it is not optional with the executors whether they will sell, and the proceeds of the sale are given to the objects of testator's bounty, the land is deemed personal property from the death of testator. *Dutton* v. *Pugh, 45 N. J. Eq. (18 Stew.) 426; Fairly* v. *Kline, 3 N. J. Law (2 Penn.) 322, 325.* The right of the son now in question was a vested right; there was a present right of future enjoyment; the right of future enjoyment was limited on an event—the death of the widow—which was certain to happen, and the son was capable of taking at any time the liferight should be spent; the present absolute right and capacity of enjoyment in the son, in the event of the cessation of the life estate, created a vested interest in him, notwithstanding the possibility of his death with issue before the death of the life tenant; in the event of his death with issue before the death of the life tenant, his interest was, by the terms of the will, to be divested, the enjoyment was merely postponed to let in the enjoyment of the life tenant; but that contingency is attached to the time of payment and not to the substance of the gift; it is the uncertainty of the right of enjoyment, and not the uncertainty of actual enjoyment which prevents a right from vesting and renders it contingent. See *Miller* v. *Worrall, 59 N. J. Eq. (14 Dick.) 134; Price* v. *Sisson, supra* (at *p. 177*) ; *Weehawken*

*Ferry Co.* v. *Sisson, supra* (at *p. 179*) ; *Executors of Wintermute* v. *Executors of Snyder, 3 N. J. Eq. (2 Gr. Ch.) 489, 492; Fairly* v. *Kline, 3 N. J. Law (2 Penn.) 322, \*754; Van Dyke's Administrator* v. *Vanderpool's Administrator, 14 N. J. Eq. (1 McCart.) 198; Thomas' Executors* v. *Anderson's Administrator, 21 N. J. Eq. (6 C. E. Gr.) 22; Beatty's Administrator* v. *Montgomery's Executors, 21 N. J. Eq. (6 C. E. Gr.) 324, 327; Executors of Kearney* v. *Kearney, 17 N. J. Eq. (2 C. E. Gr.) 59; S. C. on appeal, 17 N. J. Eq. (2 C. E. Gr.) 505; Huber* v. *Donoghue, 49 N. J. Eq. (4 Dick.) 125.* This view in no way conflicts with the rule that where a bequest is limited over after a life estate to several persons and the "survivors," their interest is contingent, and no rights will vest until the termination of the life estate, as in *Van Tilburgh* v. *Hollingshead, 14 N. J. Eq. (1 McCart.) 32,* and *Williamson* v. *Chamberlain, 10 N. J. Eq. (2 Stock.) 373.* As has been already stated, the son John Kennedy died intestate in the year 1895, leaving no issue and leaving a widow. As the interest of John Kennedy was a vested interest, the change in the statute of distribution of this state in the year 1908 (*P. L. 1908 p. 644*) cannot alter the shares to which the widow and the next of kin of John Kennedy were severally entitled in his estate at the time of his death. *Van Tilburgh* v. *Hollingshead, supra.* The result is that one-half of the one-twelfth share of John Kennedy should be distributed to his widow.

Another controversy exists touching the force of the provisions of the will in favor of the children of testator's daughter Elizabeth Eisley. One of these children, James, died intestate and without issue prior to the decease of testator. Where a gift is to several persons by name, a presumption arises, in the absence of contrary intent apparent on the face of the will, that the persons named are to take in their individual, and not in their collective capacity, even though the persons so named constitute a class. . In such case the bequest lapses as to any one of the persons named who may be dead at the time of the death of testator. *Dildine* v. *Dildine, 32 N. J. Eq. (5 Stew.) 78; Collins* v. *Bergen, 42 N. J. Eq. (15 Stew.) 57.* The provisions of section 34 of our statute concerning wills (*3 Gen. Stat. p. 3763*) does not include

a case in which the legatee dies without issue. The presumption referred to, however, is but a rule of construction to be used in the ascertainment of the intention of testator; the presumption is not conclusive. If it sufficiently appears from the will that it was the intention of testator to make a bequest to a class, as distinguished from the individuals who may compose the class at the time the will was made, the death of one or more of the persons before testator will not cause a lapse of any part of the fund, but the survivors of the class will take the whole; such an intention may be manifest even when the persons comprising the class are named. *Jackson* v. *Roberts, 14 Gray (Mass.) 546; Schaffer* v. *Kettell, 14 Allen (Mass.) 528; Stedman* v. *Priest, 103 Mass. 293; Page* v. *Gilbert, 32 Hun (N. Y.) 301; Hoppock* v. *Tucker, 59 N. Y. 202.* In the present case, I think it apparent that it was the intention of testator to give one-twelfth of his estate to the children of his daughter Elizabeth as a class. By the will he divided his entire estate into twelve equal shares and gave one share to each of his eleven living children, and the other share to the "children of my deceased daughter Sarah Eisley, to which she would be entitled to if living." No provision was made in the will for a residuary estate. This general plan discloses a purpose on the part of testator to dispose of his entire estate and to dispose of it in equal shares in such manner that the children of his deceased daughter should represent their mother and take their mother's share. The mere fact that the children of his deceased daughter were mentioned by name should not, I am convinced, be considered sufficient to overcome the intent which seems otherwise apparent. In *Hoppock* v. *Tucker, supra,* the general plan disclosed by the will was deemed sufficient to indicate a defined intention to give to a class. But another circumstance should not be overlooked. After the decease of James, testator made a codicil to his will and made no provision for any unwilled estate. In *Jackson* v. *Roberts, supra,* that circumstance was held to indicate that the original intention of testator was to make the bequest to a class and to disclose that it was the belief of testator that he had done so. I am constrained to hold that at the decease of testator one-twelfth of his estate became vested in his three grandchildren, Elizabeth, Ralph and Walter, equally, to be

enjoyed by them in possession at the decease of the widow of testator. As these shares were severally vested in these three grandchildren of testator at his decease, with no conditions subsequent annexed, they severally passed, at their death, according to our statute of distribution as it existed at the time of their several deaths.

I will advise a decree in accordance with the views herein expressed.