Jane A. Elsworth died May 17th, 1928, leaving a will dated March 21st, 1923, duly admitted to probate. The executor and trustee therein named renounced and the complainant was appointed substitutionary administrator and trustee. The testatrix was unmarried and left no issue, or brothers or sisters, her nearest relatives being nephews and nieces. By her will, after providing for funeral expenses, a marker for her grave and two bequests of $1,000 each, she gave the residue of her estate of her executor in trust, to invest and to pay according to the provisions of clauses 5-c and 5-e of her will.
Clause 5-c is as follows:
"To my nieces Garadetta Van Burkirk and Mary Fitzgerald and my nephews Watson Van Buskirk and Edward Van Buskirk, in equal shares, the interest upon five thousand dollars for and during the term of each of their natural life, and upon the decease of the last one of my nephews or nieces mentioned in this paragraph, the said sum of five thousand dollars shall become a part of my residuary estate."
Clause 5-e is as follows:
"To my nephews Robert Elsworth, John Elsworth and Norman Elsworth, the income derived from the balance of my estate remaining, together with all other moneys that shall fall into my residuary estate as hereinbefore provided, in equal shares for and during the term of their natural life, and upon the decease of my said nephews to pay over said balance of my estate and all moneys that shall become a part of my residuary estate, to such child or children of my said nephews, including the child of my nephew Norman, by his first marriage, as shall be living at that time, in equal shares."
Edward Van Buskirk, one of the nephews mentioned in clause 5-c, predeceased the testatrix, unmarried and without leaving issue and the other nephew and the nieces therein mentioned are still alive.
As to the nephews mentioned in clause 5-e, Robert Elsworth is alive and is married, but has no child. John Elsworth is alive, married and has one child named John R. Elsworth. Norman Elsworth died January 27th, 1929, thus surviving the testatrix about eight months. He married *Page 231 
Anna Smith, May 14th, 1904, when she was a little less than sixteen years of age and they had an only child, named Noella Edna, born July 29th, 1904, who afterward married George Post. When this child was born, Anna Smith Elsworth was informed (she says) that because of her youth her marriage to Norman Elsworth was not legal and she never lived with him thereafter and she subsequently married one Clark, without obtaining a divorce from, or having her marriage to Norman Elsworth annulled and she is still alive. The child Noella Edna visited the testatrix frequently until her father married Mary Hahn, August 19th, 1919. The testatrix was present at this second marriage of which a child, named Bertha J. Elsworth, was born November, 1920, and the testatrix became this child's godmother. From the time of Norman Elsworth's second marriage and until the testatrix's death, he lived with his second wife and their child in the immediate neighborhood of the testatrix's residence (from August, 1925, they lived in adjoining houses) and were on friendly terms with and visited each other.
The complainant seeks interpretation of the quoted clauses and instructions as to its duty with respect thereto and the first question to be determined is: Do the life tenants therein named take as tenants in common, or as joint tenants with the right of survivorship?
It is a rule of construction that a gift by will to individuals described by name, though they may constitute a class, indicates the testator's intention to give to them only as individuals and they therefore take as tenants in common. Mason v. Trustees,27 N.J. Eq. 47; Dildine v. Dildine, 32 N.J. Eq. 78;Stoutenburgh v. Moore, 37 N.J. Eq. 63; affirmed, 38 N.J. Eq. 281; Security Trust Co. v. Lovett, 78 N.J. Eq. 445;Pennsylvania Co. v. Riley, 89 N.J. Eq. 252. But the testator's intention is the law of wills when it does not conflict with statutory limitations or principles of public policy, and if upon reading the whole will it appears that it was his intention that the persons so named should take as a class and not as individuals, the will must be construed accordingly and they will take as joint tenants and the death *Page 232 
of one of the persons named, before the death of the testator, will not cause a lapse of part of the gift. Dildine v.Dildine, supra; Security Trust Co. v. Lovett, supra;Pennsylvania Co. v. Riley, supra.
By clause 5-c, the testatrix directed her executor and trustee to invest the sum of $5,000 and hold the corpus until the decease of the last one of four nieces and nephews and to pay to them the interest on the investment for and during the term of "each of their natural life." The use of the word "each" has some signifiance and I think that thereby the testatrix intended that the entire income should be paid during the lives of each and every of her nieces and nephews, equally according to the number of such persons who survived her, to such survivors and to and including the last survivor. If it was her intention that each of the four should receive only one-fourth of the income for their respective lives, then she made no provision for the disposition of the share of income of the one dying. Such failure, coupled with her direction that the corpus should remain intact until the death of the last surviving niece or nephew, strengthens my belief that she intended the nieces and nephews named in this clause to receive the income as joint tenants and not as tenants in common. The death of the nephew, Edward Van Buskirk, did not cause a lapse of part of the income, and the complainant is advised that the entire income is to be paid to the remaining nieces and nephew equally during their lives and to the last survivor until his or her death, when the corpus reverts to the testatrix's residuary estate.
By clause 5-e the testatrix directed that the income derived from the balance of her residuary estate should be paid to three nephews for and during the term of "their natural life" and "upon the decease of my said nephews," the corpus should be paid to such child or children of said nephews as should be living at that time. The plan of disposition by this clause differs from the plan disclosed by clause 5-c, in that the income is not given the nephews for "each of their natural life" and the disposition of corpus is not directed to be made "upon the decease of the last one of my nephews." *Page 233 
By clause 5-e the testatrix either intended that no final disposition of her estate should be made until all the nephews named had died, and that upon the death of the last survivor such children then alive of the three nephews should take thecorpus; or she intended that the three nephews should take as individuals, each to receive one-third of the income for life and as their respective deaths occurred, one-third of the corpus
should be distributed. Here the rule of construction above stated operates, demonstrating its reasonableness, and it must be held that the latter proposition states the testatrix's intention. All three nephews survived the testatrix and Norman has since died. Upon his death, one-third of the residuary estate became invested in "such child or children of my said nephews" as were living at Norman's death.
The next question to be determined is: Is Bertha J. Elsworth, the child of Norman Elsworth by his second and bigamous marriage, entitled to take under the terms of clause 5-e?
In Heater v. Van Auken, 14 N.J. Eq. 159, it was held that under a devise or bequest to children as a class, illegitimate children are not intended, unless the testator's intention to include them is manifest from the will itself; and when under the general description of "children" there are legitimate children to take, the word cannot be extended by extraneous evidence to include illegitimate children. But it seems now to be the rule that in addition to what can be gathered from the will, evidence of circumstances surrounding the testator at the time of its execution may be considered for the purpose of showing that by the word "children," the testator intended to include both legitimate and illegitimate children. Tuttle v. Woolworth,74 N.J. Eq. 310; Lembeck v. Harms, 98 N.J. Law 95; Bank ofMontclair v. McCutcheon, 107 N.J. Eq. 564.
The child Bertha is not the offspring of a meretricious relation, but of a ceremonial marriage, at which the testatrix was present and the testatrix became the girl's godmother. Her parents lived together as husband and wife ten years *Page 234 
until Norman Elsworth's death, and they and their children were freely and frequently received in the testatrix's home. From the time of Norman's other and first marriage, he never lived with his first wife and she says that she did not regard her marriage as legal because of her immature age, and she married another man without the formality of an annulment or divorce. Norman also looked upon that marriage as not binding, for he too, married again. The testatrix probably shared their belief as to the legality of that first marriage and consequently doubted the legitimacy of Noella, their child, but nevertheless the testatrix desired that Noella should share in her estate with Bertha. If the testatrix was certain of Noella's legitimacy why, after by her will giving the remainder of her estate to the children of her nephews, did she feel it necessary to add "including the child of my nephew Norman by his first marriage?" Fifteen years after Norman's first marriage, during which period he lived as an unmarried man, he married again and fifteen months later Bertha was born and more than two years after her birth the testatrix executed her will. All the surrounding circumstances indicate to my mind that the testatrix believed Norman's second wife to be a lawful wife and knowing, when she executed her will, that Norman had two children and doubting Noella's legitimacy, she must have believed Bertha to be Norman's child by a lawful wife and as such entitled to any devise or bequest she might make to Norman's child or children and so I am satisfied from the will itself, explained by the circumstances surrounding the testatrix, that Bertha J. Elsworth is entitled to share under clause 5-e.
The next question to be determined is: To whom did the textatrix intend that the share of corpus, distributable on the death of Norman Elsworth, should be paid? Did she intend that upon the death of a nephew named in clause 5-e, the share ofcorpus then to be distributed should go per capita to the children then living of all the nephews, or that such share should be distributed per stirpes only to children of the deceased nephew? *Page 235 
The testatrix's scheme was to provide for her three nephews for life and, as they should die, for their respective children. She said that upon the decease of her nephews her residuary estate should go to her nephews' children, by which I understand her to mean (as I have heretofore stated) that at the respective deaths of her nephews the share of residue of which she gave them respectively the income, should go to the remaindermen. She intended to divide the residue of her estate among her nephews, giving each the use of a third thereof for life and at the death of each, one-third of the corpus to go to his children, which means a per stirpes division in remainder. She used the words "in equal shares" twice, once to express a one-third division of income among her nephews and the second time to indicate an equal division of corpus, that is to say, one-third to the nephews' respective representatives. If it is doubtful whether she intended distribution of corpus in the manner I have concluded, or a per capita distribution to the living children of all nephews, the former construction should be adopted, not only as being more probable, but also as being in accordance with the policy of the law. Stoutenburgh v. Moore, supra.
The complainant is advised that upon the death of Norman Elsworth, his children, Noella Edna and Bertha J., became entitled to receive one-third of the testatrix's residuary estate, equally. They take a vested interest in one-third of the sum of $5,000 which is held in trust for the purposes of clause 5-c, although the time of enjoyment is postponed until the death of the last survivor of the persons named in that clause. The effect of the will is that by clause 5-c the income on said trust fund is given for life to the person named therein and to the survivor and upon the death of the survivor, by clause 5-e, one-third of such income is given to Norman Elsworth for life and upon his death one-third of said $5,000 is given to his children. Clause 5-e expressly provides that the testatrix's residuary estate "and all moneys that shall become a part" thereof, shall be paid to the remaindermen and that they shall take upon the death of their respective parents. *Page 236